UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES E. WELLS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-1460** |
| **MEDTRONIC, INC., et al.** | **SECTION: "G"(1)** |

## ORDER

Before the Court are Plaintiffs James E. Wells and Ann M. Wells' (collectively, "Plaintiffs") "Motion for Leave to File First Amending and Supplemental Complaint"[1] and "Motion to Remand."[2] Having considered the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant both motions.

## I. Background

### A.    *Factual Background*

This lawsuit arises out of an anterior cervical spine surgery that was performed at Tulane Medical Center in New Orleans, Louisiana on May 23, 2014.[3] According to the Complaint, Plaintiff James E. Wells received a Medtronic dynamic titanium implant, which was manufactured and/or distributed by Defendants Medtronic, Inc. and Medtronic USA, Inc. (collectively, "Defendants").[4] According to Plaintiffs, when James E. Wells returned to see his doctor on July 14, 2014, x-rays were taken and revealed that the Medtronic device had fractured

---

[1] Rec. Doc. 5.

[2] Rec. Doc. 12.

[3] Rec. Doc. 1-1 at p. 3.

[4] *Id.*

in half.[5] Plaintiffs allege that the fracture was caused by the Defendants' negligent manufacture or design of the product, which they believe to be the Atlantis Translational Anterior Cervical Plate System ("Atlantis System").[6]

**B.    *Procedural Background***

Plaintiffs filed this lawsuit on February 10, 2015 in the Civil District Court for the Parish of Orleans, Louisiana.[7] In the petition, Plaintiffs named Medtronic, Inc. and Medtronic USA, Inc., as well as "Defendant ABC," as the defendants in the suit.[8] On May 1, 2015, Defendants removed the case to federal district court, alleging complete diversity of citizenship and an amount in controversy exceeding $75,000.[9] On May 22, 2015, Plaintiffs filed an ex parte motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15, wherein they sought to add a non-diverse defendant, Hudson Higgins ("Higgins").[10] On May 26, 2015, Defendants filed an opposition to the motion, arguing that Plaintiffs' motion should be set for submission pursuant to Fifth Circuit precedent requiring courts to strictly scrutinize amendments to pleadings that would destroy diversity jurisdiction.[11] On May 26, 2015, the Court set Plaintiffs' motion to amend the complaint for hearing on June 24, 2015, without oral argument.[12]

---

[5] *Id.* at p. 4.

[6] *Id.* at pp. 3–4.

[7] *Id.* at p. 1.

[8] *Id.*

[9] Rec. Doc. 1 at p. 3.

[10] Rec. Doc. 5-1 at p. 2.

[11] Rec. Doc. 6 at p. 2.

[12] Rec. Doc. 7.

On June 1, 2015, Plaintiffs filed a motion to remand.[13] In response to joint requests for continuances, the Court twice continued the hearing dates on Plaintiffs' pending motions, first to August 19, 2015,[14] and next to September 30, 2015.[15] On September 18, 2015, Plaintiffs filed a reply memorandum in support of their motion to amend the complaint, but the reply was struck as deficient by a Clerk of the Court.[16] Also on September 18, 2015, the parties requested that the Court indefinitely continue the hearing dates on both motions or, in the alternative, administratively close the case pending settlement negotiations.[17] The Court denied the parties' request on September 21, 2015.[18]

On September 22, 2015, Defendants filed oppositions to both the motion to amend the complaint and the motion to remand, wherein they addressed arguments made in Plaintiffs' reply brief while noting that the reply was not properly before the Court yet.[19] Plaintiffs properly filed their reply, styled as a reply in support of both pending motions, on September 25, 2015.[20]

---

[13] Rec. Doc. 12.

[14] Rec. Doc. 14.

[15] Rec. Doc. 17.

[16] Rec. Doc. 18.

[17] Rec. Doc. 19.

[18] Rec. Doc. 22.

[19] Rec. Docs. 23, 24.

[20] Rec. Doc. 26. On September 28, 2015, before the submission date for the already pending motions, Plaintiffs filed a motion for leave to file a second amending and supplemental complaint, in which they seek to add John A. Davis ("Davis"), the doctor who performed the surgery on James E. Wells, and Tulane University Hospital & Clinic – Health Care Indemnity, Inc., two additional non-diverse defendants. Rec. Doc. 28. Because the Court herein grants Plaintiffs' first motion to amend their complaint, which thereby destroys diversity and requires this Court to remand the case, the Court need not reach Plaintiffs' arguments regarding joining the other defendants.

## II. Parties' Arguments

**A.    *Plaintiffs' Arguments in Support of Motion for Leave to File First Amending and Supplemental Complaint***

In their first motion for leave to amend their complaint, Plaintiffs argue that Federal Rule of Civil Procedure 15 allows them to amend their complaint as a matter of course before Defendants have filed any pleadings as set forth under Rule 15(A)(1)(b).[21] According to Plaintiffs, the purpose of the amended complaint is to clarify the identity of the previously unknown non-diverse defendant named as "ABC" in the original petition, who on April 23, 2015 was discovered to be Higgins.[22]

**B.    *Defendants' Arguments in Opposition to Amendment of Complaint***

Defendants filed two oppositions to the first motion to amend Plaintiffs' complaint. In the first opposition, Defendants argue that Plaintiffs' motion should not be treated as a motion to amend as a matter of course pursuant to Rule 15, because the motion was both untimely and improper under Fifth Circuit jurisprudence.[23] Defendants argue that Rule 15(a)(1), relied upon by Plaintiffs, is inapplicable because more than 21 days had passed since service of Plaintiffs' petition, which took place on April 14, 2015, and Defendants had not yet filed responsive pleadings or any motions pursuant to Federal Rules of Civil Procedure 12(b), (e), or (f).[24] Accordingly, Defendants argue, Rule 15(a)(2) would ordinarily apply, requiring Plaintiffs to

---

[21] Rec. Doc. 5-1 at p. 1.

[22] *Id.* at p. 2.

[23] Rec. Doc. 6 at p. 1.

[24] *Id.* at p. 3.

4

either seek written consent of the opposing party or to seek leave of court.[25]

Defendants claim, however, that even if Plaintiffs did have a right to amend as a matter of course pursuant to Rule 15(a)(2), however, the jurisprudence holds that when a party seeks to add a non-diverse defendant post-removal that would destroy diversity, Rule 15 is circumscribed by 28 U.S.C. § 1447, and the district court should conduct an analysis pursuant to factors set forth by the Fifth Circuit in *Hensgens v. Deere & Co.*[26]

**C.     *Plaintiffs' Arguments in Further Support of Amendment***

In their reply, Plaintiffs claim that in their Petition, they named "Defendant ABC," a fictitious, unknown defendant believed to be a Louisiana citizen but not yet identified through discovery, who they believed to be a representative of Medtronic, and who they believed locally supplied the spinal implant to the operation room at Tulane University Hospital and actively participated in the decision to use the particular device.[27] Plaintiffs argue that naming the defendant ABC should have put Defendants on notice that a non-diverse defendant would be added when that individual or entity was identified through discovery.[28]

Plaintiffs contend that Defendants were served on April 14, 2015, and on or about April 23, 2015, Plaintiffs discovered that the true identity of Defendant ABC was Hudson Higgins, a resident of Orleans Parish, Louisiana, who was a highly trained representative to physicians for Medtronic spinal products, believed to be acting as an independent contractor.[29] Plaintiffs allege

---

[25] *Id.*

[26] *Id.* at pp. 3–4 (citing 833 F.2d 1179 (5th Cir. 1987)).

[27] Rec. Doc. 26 at p. 2.

[28] *Id.*

[29] *Id.*

that they informed Defendants of Higgins' identity, but did not immediately file an amending petition because of conversations between counsel for the parties about the possibilities of settlement, and because it was understood that no action was to be taken by either party until sufficient evidence was collected for consideration in settlement discussions.[30] Nevertheless, Plaintiffs claim, Defendants filed a joint Notice of Removal on May 1, 2015 alleging complete diversity.[31]

Plaintiffs aver that even if leave of Court is required to amend the complaint, Rule 15(a)(2) states that "[t]he court should freely give leave when justice requires."[32] Here, Plaintiffs argue, justice requires allowing the amendment because Defendants were on notice of an unknown Louisiana defendant and were notified of his true identity when it was discovered.[33] Plaintiffs contend that although they did not immediately move to amend their complaint because negotiations toward a settlement were underway, the Defendants' filing of a Notice of Removal forced the Plaintiffs to immediately identify Defendant ABC in an amending and supplemental petition in order to then file a motion to remand, which must be filed within 30 days of a Notice of Removal.[34] Furthermore, Plaintiffs argue, the available records required expert review to confirm the exact participation of Higgins during the surgical procedure of May 23, 2014, accounting for the Plaintiffs' delay in naming him.[35] According to Plaintiffs, Higgins

---

[30] *Id.*

[31] *Id.*

[32] *Id.* at p. 3.

[33] *Id.* at p. 4.

[34] *Id.*

[35] *Id.* at p. 5.

was a highly trained sales representative who was present during the surgery and materially participated in the decision, along with the surgeon, to use the Atlantis System.[36]

Plaintiffs allege that Defendants' representations that Plaintiffs do not have a reasonable probability of recovery against Higgins because Higgins was not the manufacturer of the medical device at issue and had no duty to warn the "learned intermediary" of issues concerning the product are without merit.[37] According to Plaintiffs, "the sales representative for spinal surgical devices is not a passive displayer of wares, but rather is a highly trained professional, usually present in the operating room to give advice to the surgeon as to choice of product, its assembly, and its method of insertion. At times, sales reps will even scrub into the surgical procedure to demonstrate or help the scrub tech with assembly on the back table."[38] Plaintiffs contend that surgeons often rely upon the sales representative to supply necessary information, as the sales representative is the liaison with the manufacturer.[39] As such, Plaintiffs argue, although the duty to warn lies with the manufacturer, the sales representative is the individual charged with the responsibility of dispensing that information.[40]

Plaintiffs argue that the operative nursing notes of the medical record clearly indicate that Higgins was present during the operation at issue and supplied the device that ultimately failed.[41] Moreover, Plaintiffs assert, Higgins was again present in the operating room on July 19, 2014,

---

[36] *Id.*

[37] *Id.* at p. 6.

[38] *Id.*

[39] *Id.*

[40] *Id.* at pp. 6–7.

[41] *Id.* at p. 7.

when the device was removed, and took the failed plate into his possession for return to Defendants for analysis.[42] Plaintiffs contend that although Davis, the surgeon, was certainly a learned intermediary, he was supplied his "learning" of the device largely through Higgins.[43]

Plaintiffs also contend that, although Defendants argue that the Plaintiffs' admission of knowing Higgins' identity prior to removal suggests that the principal purpose for the amendment was to destroy diversity, the argument is specious because Defendants were on notice from the original petition that a third, unknown defendant was involved, one who was believed to be a resident of Louisiana.[44] Moreover, Plaintiffs contend, any alleged delay was due to the parties' engagement in good faith settlement negotiations.[45]

### D.    *Defendants' Arguments in Further Opposition to Amendment*

Defendants respond that because Plaintiffs' proposed amended pleading seeks to add a non-diverse party that would destroy diversity, Rule 15 is in tension with 28 U.S.C. § 1447(e).[46] In such situations, Defendants contend, § 1447(e) constricts Rule 15 and requires the court to balance the original defendant's interest in maintaining a federal forum with the competing interest of avoiding parallel lawsuits.[47]

In *Hensgens*, Defendants contend, the Fifth Circuit instructed district courts to consider four factors when determining whether to allow an amendment that would destroy diversity: (1)

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] Rec. Doc. 23 at p. 3.

[47] *Id.* (citing *Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709 (W.D. Tex. 2014); *Zibari v. Int'l College of Surgeons*, No. 14-0858, 2014 WL 4146382 (W.D. La. Aug. 19, 2014)).

the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if amendment is not allowed; and (4) any other factor bearing on the equities.[48] Defendants claim that, if, after considering these factors, the Court grants joinder, it must remand the matter to state court; if it denies joinder, it cannot remand.[49] According to Defendants, in *Cobb v. Delta Exports, Inc.*, the Fifth Circuit held that the "fraudulent joinder" doctrine would be inapplicable after a post-removal joinder of a non-diverse party.[50] Defendants assert that, in *Cobb*, the Fifth Circuit explained that a "request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction" would never be granted, and thus a defendant may argue at the time when joinder is considered that there is "no colorable claim against the party the plaintiff is seeking to join."[51] Thus, Defendants argue, they can seek to prevent post-removal joinder of a non-diverse defendant by showing that the plaintiff has no colorable claim against that defendant.[52]

Defendants cite *Zibari v. International College of Surgeons*, a Western District of Louisiana case in which they allege the court noted that a district court may deny leave to amend if the proposed amendment is futile, even when the plaintiff is allowed to amend as a matter of course.[53] According to Defendants, the *Zibari* court observed that a plaintiff will not be

---

[48] *Id.* (citing *Hensgens*, 833 F.2d at 1182).

[49] *Id.* at pp. 3–4 (citing *Hensgens*, 833 F.2d at 1182).

[50] *Id.* at p. 4 (citing 186 F.3d 675 (5th Cir. 1999)).

[51] *Id.* (citing *Cobb*, 186 F.3d at 678).

[52] *Id.*

[53] *Id.* at pp. 4–5 (citing No. 14-0858, 2014 WL 4146382, at *7 (W.D. La. Aug. 19, 2014)).

"significantly injured" by a court's denial of leave to add a clearly meritless claim, and therefore it is within a district court's discretion to deny a proposed amendment as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the would-be, non-diverse defendant.[54] Defendants argue that the *Zibari* court concluded that the plaintiff had no colorable claim for relief or possibility of recovery against a non-diverse defendant because, other than naming him, the amended pleading contained no allegations against him.[55] Furthermore, Defendants contend, the *Zibari* court observed that the plaintiff sought to amend his complaint only 30 days after removal and 79 days after commencing proceedings in state court, and though this was not dilatory, the fact that the motion to amend came so closely on the heels of the defendants' dispositive motion led the court to conclude that the timing of the motion suggested an ulterior motive, an impression that was further buttressed by the proposed amendment's failure to state a claim for relief against the non-diverse defendant.[56] Thus, Defendants assert, the *Zibari* court denied the motion to amend.[57]

Likewise, Defendants argue, this Court should apply the *Hensgens* factors, as well as the "colorable claim" requirement discussed in *Cobb*, to deny Plaintiffs' motion for leave to amend.[58] According to Defendants, the lawsuit was filed on February 10, 2015, Medtronic was served on April 14, 2015, and it timely removed the matter on May 1, 2015.[59] Defendants

---

[54] *Id.* at p. 5 (citing *Zibari*, 2014 WL 4146382, at *8).

[55] *Id.* (citing *Zibari*, 2014 WL 4146382, at *8).

[56] *Id.* (citing *Zibari*, 2014 WL 4146382, at *9).

[57] *Id.* (citing *Zibari*, 2014 WL 4146382, at *10).

[58] *Id.* at p. 6.

[59] *Id.*

contend that Plaintiffs then sought to add Higgins as a defendant on May 22, 2015, and regardless of whether seeking to name him as a defendant approximately three months after filing suit is considered dilatory, Plaintiffs have no reasonable possibility of recovery against him.[60] Moreover, Defendants argue, the fact that Plaintiffs are seeking to amend their complaint shortly after removal, when they admit in their motion to knowing Higgins' identity prior to removal, suggests that the principal purpose for the amendment is to destroy diversity.[61]

Defendants aver that, notwithstanding the timing of Plaintiffs' motion to amend their complaint, Plaintiffs' allegations against Higgins are inadequate, as the proposed amended complaint contains both boilerplate, non-specific allegations against him, and more specific allegations that are not supported by the facts or applicable law.[62] Defendants assert that Plaintiffs' allegations against Higgins are that: (1) Higgins was present in the operating room with Davis when the alleged Medtronic device at issue was installed; (2) the device chosen by Higgins was defective and known to be effective only for temporary use under limited circumstances and not appropriate for the surgery at hand; and (3) he failed to warn Davis of the "inherent dangers" risked by using the Medtronic plate under the existing circumstances.[63] However, Defendants argue, Higgins attested in an affidavit that, at the time of the surgery in question, he had no knowledge of any alleged defects in the Atlantis System.[64] Furthermore, Defendants argue, despite Plaintiffs' allegation that Higgins was "materially involved" in Davis'

---

[60] Id.

[61] Id.

[62] Id.

[63] Id. at p. 7.

[64] Id.

decision to use the plate at issue, Higgins had "absolutely no input into the decision by Dr. Davis (who had been using the Atlantis [System] well before Mr. Higgins was employed with Medtronic) to surgically implant the" Atlantis System.[65] Defendants aver that "regardless of what Plaintiffs *argue*, these are the *facts*."[66]

Furthermore, Defendants argue, although Plaintiffs make claims in a reply brief regarding what medical device sales representatives typically do and how a medical device sales representative is more than a "passive displayer of wares," these generalized arguments are "wholly unsupported" and inapplicable to the facts of the instant case, which are properly supported by Higgins' testimony.[67] Furthermore, Defendants contend, despite Plaintiffs' allegations that Higgins failed to warn Davis of the risks posed by using the Medtronic system, courts reviewing similar allegations have held that medical sales representatives have no such duty to warn, as that duty lies with the manufacturer of the product, not its sales representative.[68] Defendants cite *Bloodsworth v. Smith & Nephew*, a Middle District of Alabama case, in which they aver that the court was tasked, in the context of a motion to remand, with determining whether a non-diverse medical sales representative was improperly joined to the litigation to defeat diversity.[69] According to Defendants, the court in *Bloodsworth* determined that a non-diverse medical sales representative who sold a defective hip replacement had no duty to warn pursuant to Alabama law, which Defendants contend uses the same "learned intermediary

---

[65] *Id.*

[66] *Id.*

[67] *Id.* at p. 8.

[68] *Id.* (citing *Bloodsworth v. Smith & Nephew*, No. 05-622, 2005 WL 3470337, at *7 (M.D. Ala. Dec. 19, 2005)).

doctrine" as recognized by Louisiana law.[70] Defendants aver that, as the court in *Bloodworth* explained, pursuant to the learned intermediary doctrine, any duty to warn the surgeon who performed the plaintiff's procedure was owed by the manufacturer, not the sales representative.[71]

According to Defendants, a similar result was reached in *Catlett v. Wyeth, Inc.*, a Middle District of Georgia case that concluded that, pursuant to Georgia law, there was no basis for a claim against a pharmaceutical sales representative under the learned intermediary doctrine, because although manufacturers employ sales representatives to be one source of information, the manufacturers are the ones who are ultimately responsible, and thus liable, for any alleged failure to provide information related to the prescription drugs at issue.[72] Defendants also cite *Walker v. Medtronic, Inc.*, a Northern District of Mississippi case in which they contend the court expressly held that "[u]nder the learned intermediary doctrine, any duty to warn a physician about the dangers of a medical device is placed upon the device's manufacturer; the sales representative selling the device is under no duty to warn patients . . . ."[73] Defendants claim that although there are no Louisiana cases squarely addressing the issue, under Louisiana law, as in Mississippi, Alabama, and Georgia, the manufacturer alone has the duty to warn the intermediary of inherent dangers not within the knowledge of or obvious to the average intermediary.[74] Moreover, Defendants argue, even if Louisiana did recognize a duty on the part

---

[69] *Id.* (citing *Bloodsworth*, 2005 WL 3470337, at *7).

[70] *Id.* at pp. 8–9 (citing *Zachary v. Dow Corning Corp.*, 884 F. Supp. 1061, 1065 (M.D. La. 1995); *Guidry v. Adventis Pharm., Inc.*, 418 F. Supp. 2d 835, 840 (M.D. La. 2006)).

[71] *Id.* at p. 9 (citing *Bloodsworth*, 2005 WL 3470337, at *7).

[72] *Id.* (citing 379 F. Supp. 2d 1374 (M.D. Ga. 2004)).

[73] *Id.* (citing No. 03-74, 2003 WL 21517997, at *3 (N.D. Miss. June 4, 2003)).

[74] *Id.* at pp. 9–10 (citing *Zachary*, 884 F. Supp. At 1065; *Guidry*, 418 F. Supp. 2d at 840).

of medical sales representatives, Higgins has attested to the fact that he had no knowledge of any alleged defects at the time of the surgery at issue.[75] Furthermore, Defendants allege, Higgins did not design, manufacture, or assemble the Atlantis System, he did not make any representations or warranties to Davis or the Plaintiffs concerning the suitability of the system for implantation, and he in fact never spoke with or communicated in any way with Plaintiffs.[76]

**E.**     ***Plaintiffs' Arguments in Support of Remand***

Plaintiffs filed a Motion to Remand on June 1, 2015, arguing that the motion was likely premature but being filed to ensure compliance with 28 U.S.C. § 1447(c).[77] Plaintiffs contend that because the addition of Higgins would defeat diversity, should the Court allow Plaintiffs to amend their complaint to add Higgins as a defendant, the Court should also remand the case to state court for lack of subject-matter jurisdiction.[78]

**F.**     ***Defendants' Arguments in Opposition to Remand***

In opposition, Defendants argue that Plaintiffs are correct that their motion to remand is premature, and the Court therefore should not consider it.[79] According to Defendants, the facts that support removal must be judged at the time of removal, and at the time of removal, all parties were diverse.[80] Thus, Defendants argue, the motion to remand should be denied.[81]

---

[75] *Id.* at p. 10.

[76] *Id.*

[77] Rec. Doc. 12-1 at p. 1.

[78] *Id.* at p. 2.

[79] Rec. Doc. 24 at p. 2.

[80] *Id.*

[81] *Id.*

### III. Law and Analysis

**A.    *Legal Standard on a Motion to Amend***

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."[82] The Fifth Circuit has strictly followed this rule, stating that "leave to amend should be granted liberally . . . ."[83] However, when an amendment after removal from state court would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies.[84] Section 1447(e) vests broad discretion in the trial court by expressly providing the following choice: "the court may deny joinder, or permit joinder and remand the action to the State court."[85]

The Fifth Circuit has held that when considering an amendment that would destroy the jurisdiction of a court, "justice requires that the district court consider a number of factors to balance the defendant's interest in maintaining the federal forum with the competing interest of not having parallel lawsuits."[86] Therefore, when determining whether to allow joinder of a party under § 1447(e), a district court examines the factors set out in *Hensgens v. Deere & Co.*[87] The *Hensgens* factors include:

(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction;

(2) whether plaintiff has been dilatory in asking for amendment;

---

[82] Fed. R. Civ. P. 15(a).

[83] *Robertson v. Plano City of Tex.,* 70 F.3d 21, 22 (5th Cir. 1995).

[84] *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987).

[85] 28 U.S.C. § 1447(e).

[86] *Hensgens,* 833 F.2d at 1182.

[87] *Id.*

(3) whether plaintiff will be significantly injured if amendment is not allowed; and

(4) any other factors bearing on the equities.[88]

The balancing of these interests does not hinge on "a rigid distinction of whether the proposed added party is an indispensable or permissive party."[89]

The "fraudulent joinder doctrine," by which a federal court may assert diversity jurisdiction when a non-diverse defendant has been fraudulently joined, in that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, does not apply to joinders that occur after an action is removed to federal court.[90] Therefore, a defendant has an opportunity at the time joinder is considered to prevent joinder by arguing that there is no colorable claim against the party the plaintiff is seeking to join.[91]

## B.    *Legal Standard for Remand*

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[92] A federal court has subject matter jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[93] The removing party bears the burden of demonstrating

---

[88] *Id.*; s*ee also Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013) (noting that *Hensgens* is the "correct legal standard" to apply in determining whether joinder of nondiverse parties should be permitted after removal).

[89] *Hensgens*, 833 F.2d at 1182.

[90] *Cobb v. Delta Exports, Inc.,* 186 F.3d 675, 677 (5th Cir. 1999).

[91] *Id.* at 678.

[92] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[93] 28 U.S.C. § 1332(a)(1).

that federal jurisdiction exists.[94] Subject matter jurisdiction is fixed at the time of removal, and cannot be eliminated by events that occur after removal.[95] The removal statute, 28 U.S.C. § 1441(b), states that "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."

In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[96] Remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[97] Moreover, 28 U.S.C. § 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

## C.    *Analysis*

As a preliminary matter, the parties dispute whether Plaintiffs' motion for leave to amend their complaint was timely filed pursuant to Rule 15. Plaintiffs argue that their amended complaint may be filed as a matter of right pursuant to Rule 15,[98] while Defendants contend that

---

[94] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[95] *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

[96] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[97] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

[98] Rec. Doc. 5-1 at p. 2.

17

their pleading was untimely.[99] The issue is irrelevant, however, as both parties agree that under either scenario, because the amended complaint seeks to add a non-diverse defendant, or technically, reveal the identity of a non-diverse John Doe defendant, leave to amend is not automatic and *Hensgens v. Deere & Co.* requires the Court to conduct an analysis to balance the defendant's right to maintain the federal forum with the competing interest of not having parallel lawsuits.[100] In determining whether to allow joinder of a party under § 1447(e), a district court examines the factors set out in *Hensgens*, which include:

> (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction;
>
> (2) whether plaintiff has been dilatory in asking for amendment;
>
> (3) whether plaintiff will be significantly injured if amendment is not allowed; and
>
> (4) any other factors bearing on the equities.[101]

### 1.    Purpose of the Amendment

Courts look to a number of factors to determine whether the purpose of an amendment is to destroy diversity. For example, courts will ask "whether the plaintiff[ ] knew or should have known the identity of the non-diverse defendant when the state court complaint was filed."[102] Although Defendants have alleged that Plaintiffs were dilatory in seeking amendment after discovering Higgins' identity, as examined below, they do not appear to allege that Plaintiffs

---

[99] Rec. Doc. 6 at p. 2.

[100] *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Furthermore, the Court's Scheduling Order allowed amendments to pleadings until December 15, 2015, and thus the motion was timely filed. Rec. Doc. 34 at p. 2.

[101] *Id.*

[102] *Schindler v. Charles Schwab & Co.*, No. 05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005) (Africk, J.); *see also Penny Realty Inc. v. Sw. Capital Servs., Inc.*, No. 08-0473, 2008 WL 2169437, at *2 (W.D. La. May 23, 2008).

knew or should have known Higgins' identity when the state court complaint was filed. Instead, Defendants base the bulk of their opposition to amendment on the basis that Plaintiffs cannot state a "colorable claim" against Higgins.

"[T]he case law indicates that as long as the plaintiff states a valid claim against the new defendants, the principal purpose of the amendment is not to destroy diversity jurisdiction."[103] Defendants argue that, although there are no Louisiana cases directly on point, under the "learned intermediary" doctrine employed in Louisiana, a sales representative cannot be held liable for failure to warn, as that duty lies solely with the manufacturer of a product. Moreover, Defendants assert, despite Plaintiffs' claims in their amended complaint that Higgins was directly involved in the decision to use the allegedly defective Medtronic device, the "facts" of this case, as evidenced by Higgins' affidavit, contradict Plaintiffs' allegations.

In *Cobb v. Delta Exports, Inc.*, the Fifth Circuit stated in dicta that the "fraudulent joinder" doctrine would be inapplicable after a post-removal joinder of a non-diverse party, because presumably the defendant could raise such arguments at the time that the district court was considering whether to allow amendment.[104] Therefore, it appears that the Court employs the "fraudulent joinder" test at this stage to determine whether Plaintiffs could state a claim against Higgins.[105] Although it is well-established that on a motion to dismiss, a district court

---

[103] *Herzog v. Johns Manville Prods. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002) (Fallon, J.) (citing *Bienaime v. Kitzman*, No. 00–473, 2000 WL 381932, at *2 (E.D. La. April 12, 2000); *Burton v. Mentor Corp.*, No. 96–278, 1996 WL 751063, at *1 (E.D. La. Oct. 29, 1996)). *See also Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991) (upholding a district court decision finding that where the plaintiff had a valid cause of action against a defendant, the principal purpose of the amendment was not to defeat federal jurisdiction).

[104] 186 F.3d 675 (5th Cir. 1999).

[105] *See, e.g.*, *Noble v. Norfolk S. Corp.*, No. 02-3233, 2003 WL 1618590, at *3 (E.D. La. Mar. 26, 2003) (employing the fraudulent joinder doctrine in evaluating the *Hensgens* factors).

may not "go outside the complaint" to determine whether a plaintiff may state a claim against a defendant,[106] the standard is less certain under the fraudulent joinder doctrine.

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit held that district courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways.[107] First, the court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[108] Second, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[109] If a court decides to "pierce the pleadings" when assessing a claim of fraudulent joinder, it may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor.[110] However, the court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[111] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the

---

[106] *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013).

[107] 385 F.3d 568, 573 (5th Cir. 2004).

[108] *Id.*

[109] *Id.*

[110] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003)

[111] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

possibility" that the non-diverse party may be held liable.[112]

If the Court finds that, even taking all allegations in the amended complaint as true, Plaintiffs cannot state a claim against Higgins, then the Court need not determine whether it needs to pierce the pleadings to resolve this matter. In their amended complaint, in addition to general allegations of liability, Plaintiffs specifically claim that Higgins was the local representative for Medtronic; he was present in the operating room with Davis when the Atlantis System was installed; Higgins was materially involved in choosing the particular plate installed, which was defective and known to be effective only for temporary use under limited circumstances, and thus not appropriate for the surgery at hand; and he failed to warn Davis of the "inherent dangers" risked by using the Medtronic plate under the existing circumstances.[113]

Louisiana follows the learned intermediary doctrine, wherein the manufacturer has no duty to warn the patient, but need only warn the patient's physician.[114] To recover against a manufacturer for a failure to warn under the learned intermediary doctrine, "a plaintiff must show: (1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury."[115] Even if a product is not defectively designed or constructed, a manufacturer may still have a duty to warn consumers about any characteristic of the product that unreasonably may cause damage.[116]

---

[112] *Travis*, 326 F.3d at 650.

[113] Rec. Doc. 5-2 at p. 3.

[114] *See Guidry v. Aventis Pharm., Inc.*, 418 F. Supp. 2d 835, 840 (M.D. La. 2006).

[115] *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).

[116] *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 205 (5th Cir. 2001).

The party asserting improper joinder "bears a heavy burden of proving that joinder of the in-state party was improper."[117] Defendants allege that Plaintiffs cannot state a claim because sales representatives do not owe a duty to warn under Louisiana's "learned intermediary" doctrine. Defendants cite several cases from Alabama, Georgia, and Mississippi with similar facts that they claim all stand for the proposition that sales representatives cannot be held liable, as any duty to warn rests with the manufacturer, rather than a sales representative.[118] Although Defendants accurately summarize the cases they rely on, Defendants admit that they are aware of no Louisiana case that squarely addresses the issue, and the Court has not found any.

Moreover, although Louisiana does employ the "learned intermediary" doctrine,[119] Defendants do not explain why the doctrine, which generally states that "a drug manufacturer's obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on its use and advise the patient," should automatically exclude sales representatives from liability.[120] Indeed, under certain factual circumstances, a judge in the Northern District of Mississippi has concluded that allegations that a sales representative directly participated in a tort, such as by intentionally dodging questions and misrepresenting the risks of a drug, could allow a plaintiff to

---

[117] *Smallwood*, 385 F.3d at 574.

[118] *See* Rec. Doc. 23 at pp. 7–10 (citing *Bloodsworth v. Smith & Nephew*, No. 05-622, 2005 WL 3470337, at *6 (M.D. Ala. Dec. 19, 2005); *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374 (M.D. Ga. 2004); *Walker v. Medtronic, Inc.*, No. 03-74, 2003 WL 21517997, at *3 (N.D. Miss. June 4, 2003)).

[119] *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 265 (5th Cir. 2002); *Calhoun v. Hoffman-La Roche, Inc.*, 1998-2770 (La. App. 1 Cir. 2/18/00); 768 So. 2d 57, 59, *writ denied*, 2000-1223 (La. 6/23/00); 765 So. 2d 1041.

[120] *Calhoun*, 768 So. 2d at 59 n.1.

recover against a sales representative.[121] In Texas, which similarly utilizes the learned intermediary doctrine, a judge in the Southern District of Texas has concluded that the learned intermediary doctrine does not preclude recovery against a sales representative under Texas law, because "when the warning to the learned intermediary—the prescribing physician—is inadequate or misleading, the manufacturer and its sales representatives remain liable for injuries sustained by the patient who is prescribed the medication."[122]

Plaintiffs allege that Higgins, as Medtronic's sales representative, is liable under this doctrine for failure to warn the surgeon regarding the dangers of using the Atlantis System, which was known to be effective for only temporary use under limited circumstances, "in the case of a multilevel corpectomy and strut graft in which only the top and bottom segments of the plate would be fixated by screws."[123] According to Plaintiffs, Higgins was the liaison between the surgeon and the manufacturer, and was therefore the individual relied upon by Defendants to disperse information to the surgeon.[124] As such, Plaintiffs allege, Higgins shares with Defendants the duty to warn Davis, the "learned intermediary," regarding any possible risks or defects.[125] The Court determines that, without authority to the contrary, it appears that Plaintiffs have met their minimal burden of showing that they can state a claim that Higgins failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician.

---

[121] *Smith v. Merck & Co., Inc.*, No. 07-170, 2007 WL 3120254, at *3 (N.D. Miss. Oct. 23, 2007).

[122] *Vargas v. Merck & Co.*, No. 06-501, 2006 WL 3487403, at *3 (S.D. Tex. Dec. 1, 2006); *accord Salazar v. Merck & Co.*, No. 05-445, 2005 WL 2875332, at *3 (S.D. Tex. Nov. 2, 2005).

[123] Rec. Doc. 5-2 at p. 3.

[124] Rec. Doc. 26 at p. 6.

[125] *Id.* at pp. 6–7.

There is no controlling authority on point, and inquiries into similar situations by other courts have resulted in different conclusions.[126] Therefore, the Court cannot conclude that, on the face of the complaint, "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[127] Moreover, to the extent that the Court must make an "*Erie* guess" regarding Louisiana law to address this question,[128] it would be inappropriate at this stage for the Court to conclude that Louisiana law bars recovery against a sales representative for breaching the duty to warn, particularly in light of the fact that, in making determinations regarding improper joinder, the district court is "obliged to resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in [the plaintiff's] favor."[129] First, neither party adequately briefs the Court regarding Louisiana's application of the learned intermediary doctrine. Furthermore, the closest authority the Court could find on the issue is a decision by the Louisiana Third Circuit Court of Appeal in *Marks v. OHMEDA, Inc.* stating that the duty to warn, as established by Louisiana Revised Statute § 2800.57, "cannot be delegated;" the *Marks* court made no comment, however, on whether the duty is shared by representatives or liaisons of the manufacturer.[130]

---

[126] *Compare Bloodsworth v. Smith & Nephew*, No. 05-622, 2005 WL 3470337, at *6 (M.D. Ala. Dec. 19, 2005) *with Vargas*, 2006 WL 3487403, at *3.

[127] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc).

[128] *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 546–47 (5th Cir. 2004). To make an "*Erie* guess," the Court "employ[s] the appropriate Louisiana methodology to decide this issue the way that [it believes] the Supreme Court of Louisiana would decide it." *Id.* Courts in Louisiana "begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* at 547. These primary sources are "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (quoting La. Civ. Code art. 1).

[129] *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).

[130] *Marks v. OHMEDA, Inc.*, 2003-1446 (La. App. 3 Cir. 3/31/04); 871 So. 2d 1148, 1155 *writ denied,*

24

As noted above, Defendants, as the parties asserting improper joinder "bear[] a heavy burden of proving that joinder of the in-state party was improper."[131] Here, Defendants point to no Louisiana authorities to support their assertion that sales representatives are never liable for failure to warn under the learned intermediary doctrine, and provide no briefing to suggest that Plaintiffs could not possibly recover against Higgins. Instead, they rely solely on out-of-state, and even out-of-circuit, decisions that they claim are applicable in this context solely on the basis that Louisiana employs the "learned intermediary" doctrine. Under these circumstances, the Court is not in a position to make an *Erie* guess that Louisiana law precludes recovery against a sales representative, and as such, Defendants have not demonstrated that "there is no possibility of recovery by the plaintiff against an in-state defendant."[132]

Defendants also argue that Higgins attested in an affidavit that, at the time of the surgery in question, he had no knowledge of any alleged defects in the Atlantis System, and saw no reason to believe that the Atlantis System suffered any defects.[133] Furthermore, Defendants argue, despite Plaintiffs' allegation that Higgins was "materially involved" in Davis' decision to use the plate at issue, Higgins had "absolutely no input into the decision by Dr. Davis (who had been using the Atlantis [System] well before Mr. Higgins was employed with Medtronic) to surgically implant the" Atlantis System.[134] Although Defendants ask the Court to pierce the pleadings and determine that Higgins owes no liability to Plaintiffs, the Fifth Circuit has stated

---

2004-1653 (La. 10/8/04); 883 So. 2d 1019 and *writ denied*, 2004-1617 (La. 10/8/04); 883 So. 2d 1020.

[131] *Smallwood*, 385 F.3d at 574.

[132] *Id.* at 573.

[133] Rec. Doc. 23 at p. 7.

[134] *Id.*

that district court should look at summary judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder."[135] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within in its discretion.[136]

Here, Plaintiffs have not filed any responsive pleadings since Defendants filed their opposition attaching Higgins' affidavit.[137] Therefore, Plaintiffs have not provided any evidence to rebut Higgins' account of his involvement in the events at issue. Moreover, both parties have repeatedly alleged that the actions they have taken in these proceedings, including waiting to amend the complaint until after the notice of removal was filed, have been taken in light of the parties' good faith attempts to reach a settlement. Therefore, considering the procedural background of this case and the cursory briefing by both parties, the Court declines to proceed with a summary inquiry at this stage. As such, the Court concludes that Defendants have not met their burden of proving that, on the face of the complaint, the Plaintiffs could not possibly recover against Higgins. Therefore, the first *Hensgens* factor—whether the purpose of amendment is to destroy diversity—weighs in favor of allowing amendment.

### 2.    Whether Plaintiff Has Been Dilatory

Defendants do not separately argue that Plaintiffs have been "dilatory," but they contend that the principal purpose of the amendment was likely to destroy diversity because, although the

---

[135] *Smallwood*, 385 F.3d at 573.

[136] *Id.*

[137] Although technically Plaintiffs' reply was filed on September 25, 2015, after Defendants' opposition filed on September 22, 2015, the reply was filed to correct a deficiency noted by the Clerk of Court, and the original pleading was filed on September 18, 2015, before Defendants' opposition. *See* Rec. Docs. 20, 26.

lawsuit was filed on February 10, 2015 and Defendants timely removed the matter on May 1, 2015, Plaintiffs waited until May 22, 2015 to add Higgins as a defendant.[138] Moreover, Defendants argue that the fact that Plaintiffs are seeking to amend their complaint shortly after removal, when they admit in their motion to knowing Higgins' identity prior to removal, suggests that the principal purpose for the amendment is to destroy diversity.[139]

When determining whether a plaintiff was dilatory in seeking to amend, "courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between removal and the amendment."[140] However, courts may also consider whether parties knew of the allegedly non-diverse parties' identities at the time of filing the complaint, and whether new information has been acquired in the interim.[141] Indeed, some "courts applying *Hensgens* have found that a one or even a two-year delay in seeking to amend to add a new non-diverse defendant, depending on the circumstances, may not preclude joinder."[142]

Here, Plaintiffs waited three months after filing their complaint, three weeks after removal, and one month after allegedly learning of Higgins' identity, to seek to amend their

---

[138] Rec. Doc. 23 at p. 6.

[139] *Id.*

[140] *Tomlinson v. Allstate Indem. Co.*, No. 06–0617, 2006 WL 1331541, at *3–4 (E.D. La. May 12, 2006).

[141] *See Neely v. Scottsdale Ins. Co.*, No. 14-0048, 2014 WL 1572441, at *6 (E.D. La. Apr. 17, 2014) (finding a plaintiff was dilatory in seeking amendment where he waited nearly eight months to seek leave to add defendants whose existence he was aware of when he filed the state court action); *see also Herrero v. Sears, Roebuck, & Co.*, No. 15-2162, Rec. Doc. 22 at p. 25 (E.D. La. Oct. 20, 2015) (Brown, J.) (concluding that a plaintiff was not dilatory in seeking amendment seven months after the complaint was filed, and three months after it was removed, in light of the fact that plaintiffs moved to amend one week after learning the identity of the non-diverse party, which the defendants had previously withheld).

[142] *Karr v. Brice Bldg. Co.*, No. 08-1984, 2009 WL 1458043, at *4 (E.D. La. May 22, 2009) (Barbier, J.) (citing *Bethay v. Ford Motor Co.*, 1999 WL 496488 (E.D. La., Jul. 13, 1999); *Tujague v. Atmos Energy Corp.*, 2008 WL 489556 (E.D. La. Feb. 20, 2008)).

complaint. Defendants contend that Plaintiffs knew of Higgins' identity "prior to removal," but according to Plaintiffs, they learned of Higgins' identity on April 23, 2015, just over one week before Defendants removed the case, on May 1, 2015.[143] Moreover, both Plaintiffs and Defendants contend that the parties were actively engaged in settlement talks at the time, which presumably affected the parties' calculations regarding whether and when to file pleadings that would affect jurisdiction in this matter. Therefore, the Court is disinclined to find that a one-month delay between discovering Higgins' identity and seeking leave to amend the complaint amounts to "dilatory" behavior such that granting Plaintiffs' request to amend would be unjust. As such, the second *Hensgens* factor favors allowing Plaintiffs to amend their complaint.

### 3.     Remaining *Hensgens* Factors

Neither Plaintiffs nor Defendants make any arguments to the Court under the third or fourth *Hensgens* factors—namely, injury if amendment is denied, or any other factors bearing on the equities. As Defendants point to no additional factors suggesting that its choice of a federal forum should be honored above Plaintiffs' preference to pursue the litigation in state court, the Court declines to invent arguments for Defendants. Therefore, the Court finds that neither the third nor fourth *Hensgens* factor weighs in favor of precluding Plaintiffs from amending their complaint to substitute Higgins for "Defendant ABC."

### 4.     Remand

A federal court may exercise subject matter jurisdiction pursuant to diversity of citizenship over an action only "where the matter in controversy exceeds the sum or value of

---

[143] Rec. Doc. 5-1 at p. 2.

$75,000" and the action "is between citizens of different states."[144] Moreover, "[c]omplete diversity of citizenship is a statutorily mandated rule that is almost as old as the Republic itself."[145] It follows that if the parties are not completely diverse, and there is no other basis of jurisdiction, the Court may not exercise subject matter jurisdiction over a proceeding.[146]

In *Cobb v. Delta Exports, Inc.*, the Fifth Circuit held that post-removal joinder of non-diverse defendants pursuant to Federal Rule of Civil Procedure 19 "destroys diversity for jurisdictional purposes and requires remand, even when the newly joined defendants are not indispensable."[147] Furthermore, the Fifth Circuit stated in *Doleac ex rel. Doleac v. Michalson* that, regardless of whether a non-diverse party is joined after removal under Federal Rule of Civil Procedure 19 or substituted for a John Doe under Rule 15, once the party is properly present in the action, diversity is destroyed and subject matter jurisdiction is extinguished.[148] Therefore, as the Court has granted Plaintiffs' motion for leave to amend their complaint to add Higgins, who is alleged to be domiciled in Louisiana, the amendment destroys diversity and the Court must remand the case to state court.

## IV. Conclusion

As noted above, all four *Hensgens* factors largely favor allowing Plaintiffs to amend their complaint. Plaintiffs have sufficiently shown that: (1) the purpose of the amendment is not solely

---

[144] 28 U.S.C. § 1332(a)(1).

[145] *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1180 (5th Cir. 1987).

[146] *Herrero v. Sears, Roebuck & Co.*, No. 15-2162, 2015 WL 6159141, at *4 (E.D. La. Oct. 20, 2015) (Brown, J.).

[147] *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999).

[148] 264 F.3d 470, 475 (5th Cir. 2001) ("§ 1447(e) . . . direct[s] remand if the district court permits joinder of a defendant whose citizenship destroys subject matter jurisdiction.").

to defeat federal jurisdiction; and (2) Plaintiffs have not been dilatory in requesting leave to amend. Neither Plaintiffs nor Defendants brief the Court regarding whether Plaintiffs will be significantly injured if amendment is not allowed or other factors bearing on the equities that would favor granting Plaintiffs' motion for leave to amend their complaint. In light of the foregoing reasons, the Court herein grants Plaintiffs' motion to amend their complaint to substitute Hudson Higgins, who is domiciled in Louisiana, for "Defendant ABC." Because the Court has granted Plaintiffs' motion to amend their complaint to substitute a non-diverse party for the initially named "Defendant ABC," it must remand the case to state court. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Leave to File First Amending and Supplemental Complaint"[149] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion to Remand"[150] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this   21st   day of March, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[149] Rec. Doc. 5.

[150] Rec. Doc. 12.